UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **OLYMPIA MINERALS LEASING L L C** | **CASE NO. 2:22-CV-05754** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **J-LU LTD CO L L C ET AL** | **MAGISTRATE JUDGE LEBLANC** |

## MEMORANDUM RULING

Before the Court is a "Motion for Partial Summary Judgment" (Doc. 64) wherein Plaintiff, Olympia Minerals Leasing, LLC ("Olympia") moves the Court to find that there is no genuine issue of material fact and that Olympia is entitled to judgment as a matter of law declaring (1) the Sublease between Olympia and Defendant, J-LU LTD CO ("J-LU") terminated by its own terms in accordance with Section 5.3 of the Sublease, (2) an award of stipulated damages in the amount of two hundred fifty dollars ($250.00) per day beginning September 21, 2024, and continuing thereafter for each day of non-compliance with the Sublease, costs, and attorney's fees. J-LU has not filed an opposition to Olympia's Motion and the time for doing so has now expired.[1]

## BACKGROUND

Effective April 14, 2011, Olympia, a sublessor, granted a Partial Sublease of Oil, Gas, and Mineral Lease to J-LU (the "Sublease") as to 480 acres in Beauregard Parish (the "Subleased Premises").[2] The Sublease provided that it would "remain in full force and

---

[1] See Doc. 65, Notice of Motion Setting.
[2] Plaintiff's exhibit A-1 p. 18; See also Plaintiff's exhibit H, J-Lu Deposition p. 19:14-15 and attached exhibit 2.

Page **1** of **7**

effect for a term beginning April 14, 2011 and ending at Midnight c.s.t. on April 13, 2012."[3] It also provided that "after the primary term, if the Sublease ceases to produce oil and gas for any cause, then the Sublease shall terminate unless within one hundred twenty (120) days of the cessation" of production, the sublessee resumes production and/or conducts additional drilling or reworking operations, without a 120 day lapse of time between abandonment of one operation and commencement "of the next such operation until production is resumed or restored.[4]

The Olympia Sublease also contained the following stipulated damages clause:

> Within thirty (30) days after the expiration or termination of the Sublease as to all or any portion of the Subleased Premises including without limitation any depth in and under such lands, either during or after the Primary Term hereof, **Sublessee shall execute and record an appropriate release and acknowledgement of such expiration or termination covering all lands and depths as to which this Sublease has expired or terminated.** Sublessee shall also supply Sublessor with a copy or copies thereof properly certified by the recorder of the Parish in which the Subleased Premises are located. **If within thirty (30) days after receiving a written request for such a release (which request may be delivered during such foregoing period), Sublessee fails to timely comply with such request, Sublessee shall be liable for reasonable attorney's fees and court costs incurred in bringing suit for such failure and for all damages resulting therefrom[.] In addition, damages shall be paid by Sublessee to Sublessor equal to two hundred fifty dollars ($250.00) per day for each day of non-compliance after the expiration of said thirty (30) day period,** regardless of whether suit is filed for release, and additionally, for such additional compensatory damages as Sublessor may prove. (Emphasis added).[5]

Three wells relevant to this lawsuit are as follows:

1. Boise Southern A#3, API No. 17-011-20684, Well Serial No. 195626, in Section 16, T7S-R11W, Beauregard Parish, La. (the "Boise A#3");

---

[3] Plaintiff's exhibit A-1, § 2.1, pp. 1-2.
[4] *Id.* § 5.3, pp. 5-6.
[5] Plaintiff's exhibit A-1, § 9.2, p. 9.

2. Boise Southern No. 2, API No. 17-11-20295, Well Serial No. 157569, in Section 17, T7S-R11W, Beauregard Parish, La. (the Boise No. 2");

3. Boise Southern No. A-4, API No. 17-011-20643, Well No. 191649, in Section 17, T7S-R11W, Beauregard Parish, La. (the "Boise A-4").[6]

The Boise No. A-4 Well has not produced since 1991, and Boise No. 2 has not produce or had reworking operations on the well since 2020.[7] The Boise A-4 has not produced since October 1991. Between February 1, 2024, and June 5, 2024, (125 days), the Boise A#3 did not produce, and no reworking operations were conducted on the well.[8] Between June 12, 2024, and November 7, 2024, (148 days) the Boise A#3 did not produce, and no reworking operations were conducted on the well.[9]

On August 19, 2024, Olympia made written demand by certified mail on J-LU for an executed recordable act evidencing termination of the Sublease (*i.e.,* a release) pursuant to the terms of the Sublease and Louisiana Revised Statute 31:206 on the grounds that the Sublease expired pursuant to its own terms.[10] J-Lu received the demand letter through its registered agent on August 21, 2024, but has failed to provide Olympia the release.[11]

### SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment

---

[6] *Id.* § 22, p. 15.
[7] Plaintiff's exhibits A and A-2.
[8] Plaintiff's exhibit E, Action Production Services, LLC Affidavit; Plaintiff's exhibit F, Wrangler Wireline, Inc. Affidavit; Plaintiff's exhibit H, J-Lu Depo. pp. 40:19-24, 52:8-11.
[9] Plaintiff's exhibit E, Action Production Services, LLC Affidavit; Plaintiff's exhibit F, Wrangler Wireline, Inc. Affidavit; Plaintiff's exhibit H, J-Lu Depo. p. 27:8-11; Plaintiff's exhibit G, Roberson Depo. pp. 40:19-25, 52:8-11.
[10] Plaintiff's exhibits B, B-1; Plaintiff's exhibit H, J-Lu Depo. pp. 64:15-65:8.
[11] Plaintiff's exhibit B-2.

as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## LAW AND ANALYSIS

Olympia moves to terminate the Sublease based on § 5.3 of the Sublease, which provides that when the Sublease ceases to produce oil and gas, then it shall terminate unless the sublessee, within 120 days, resumes or restore production or conducts additional drilling or reworking operations.

*Boise A#3 non-production, failure to drill, or rework operations terminates the Sublease*

Olympia has provided undisputed summary judgment evidence that the Boise A#3, the last producing well serving to maintain the Sublease, ceased producing in January 2024, and after 120 days of cessation, production was not restored or resumed, and no additional drilling or reworking operations were conducted during that 120-day period.[12] Olympia has produced evidence that the Boise A#3 restored production on November 7, 2024, indicating a 280-day gap.[13] Accordingly, Olympia has presented undisputed evidence that between February 1, 2024 through June 5, 2024 (125 days), the Boise A#3 did not produce, and no drilling or reworking operations were conducted on the well (the "First 120-day Gap") and that operations did not commence until November 7, 2024 (the "Second 120-day Gap").

Under the express terms of the Sublease, Olympia is entitled to a declaration of termination of the Sublease due to the First 120-day Gap as well as the Second 120-day

---

[12] Plaintiff's exhibit A, John W. Gunter, III Affidavit, ¶ 6; See also Plaintiff's exhibit A-4.
[13] Plaintiff's exhibit G, Roberson Depo., pp. 40:19-24, 52:8-11; Plaintiff's exhibit C, Valerie V. Guidry, ¶ ¶ 3-4; Plaintiff's exhibit E, Action Production Services Affidavit; Plaintiff's exhibit F, Wrangler Wireline Affidavit, Plaintiff's exhibit G, Roberson Depo. pp. 46:10-14, 48:21-49:8, 50:13-51:8; Plaintiff's exhibit D, Cormier Well Service Affidavit, Plaintiff's exhibit C-1.

Gap. Considering that no opposition has been filed, and there is no ambiguity in the Sublease, nor is there any dispute as to the First and Second 120-day Gaps, the Court will grant Olympia's Motion and declare that the Sublease be terminated.

*Stipulated damages, attorney's fees and costs*

Olympia is requesting that the Court render damages, attorney's fees and costs from J-LU due to its failure to release the Sublease. Parties to a contract may stipulate damages to be recovered in case of a breach of contract. Louisiana Civil Code article 2005. A stipulated damage provision is enforceable even if no actual damages are proved. Louisiana Civil Code article 2009. The stipulated amount replaces the need for damages to be determined by the court. *Lombardo v. Deshotel*, 647 so.2d 1086, 1090 (La. 11/30/2004). There is a presumption that a stipulated damages clause agreed to by the parties is reasonable. *James Const. Group, LLC v. State ex rel. Dept. of Transp. and Development*, 977 So.2d 989, 998 (La. 1 Cir. 11/02/07).

Section 9.2 of the Sublease expressly provides, as quoted hereinabove, a stipulated damages clause as well as attorney's fees and costs for failure to provide Olympia the above- mentioned release.[14] Olympia has satisfied the Court with undisputed evidence that J-LU failed to resume or restore production or commence drilling or reworking operations within 120 days after J-LU ceased production in January 2024. Olympia made written demand on J-LU and J-LU received that demand letter but failed to provide the release to Olympia within 30 days from receipt of the demand.[15] Therefore according to the express

---

[14] Plaintiff's exhibit A-1, p. 9.
[15] Plaintiff's exhibit B, Karen B. Pilgreen; see also Plaintiff's exhibits B-1 and B-2.

terms of the stipulated damages provision in the Sublease, J-LU is liable to Olympia for (1) reasonable attorney's fees, (2) costs and (3) stipulated damages of two hundred fifty dollars ($250) per day starting on September 21, 2024,[16] and continuing thereafter for each day of non-compliance with the Sublease.

## CONCLUSION

For the reasons explained herein, and noting the absence of objections, Olympia's Motion for Partial Summary Judgment (Doc. 64) will be granted declaring the subject Sublease to be terminated and cancelled effective immediately, and awarding Olympia attorney fees, costs and stipulated damage in the amount of two hundred fifty dollars ($250.00) per day beginning September 21, 2024, and continuing thereafter for each day of non-compliance as set forth in the Sublease.

**THUS DONE AND SIGNED** in chambers on this 6th day of August, 2025.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**

---

[16] J-LU received the demand letter on August 21, 2024, and had 30 days (September 20, 2024) to submit the release to Olympia.